```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------X
HOMER KNICKERBOCKER STALEY,          :
                                              03 Civ. 7949 (WCC)
              Plaintiff,             :

      - against -                    :       OPINION
                                              AND ORDER
WILLIAM GRADY, Dutchess County District :
Attorney, sued in his official capacity,
and COUNTY OF DUTCHESS,              :

              Defendants.            :
------------------------X
```

**A P P E A R A N C E S :**

      THORNTON, BERGSTEIN & ULLRICH, LLP
      **Attorneys for Plaintiff**
      15 Railroad Avenue
      Chester, NY 12561

STEPHEN BERGSTEIN, ESQ.
    Of Counsel

      KELLY AND MEENAGH, ESQS.
      **Attorneys for Defendants**
      135 N. Water Street
      P.O. Box 1031
      Poughkeepsie, NY 12602

JOHN P. MEENAGH, JR., ESQ.
    Of Counsel

*Copies Mailed to Counsel of Record*

**CONNER, Senior D.J.:**

Plaintiff Homer Knickerbocker Staley ("Staley") commenced the present action pursuant to 42 U.S.C. § 1983 against William Grady, in his official capacity as the Dutchess County District Attorney, and the County of Dutchess (the "County"; collectively the "defendants"). Plaintiff alleges that when defendants rejected his cross-complaint they violated the Equal Protection Clause of the United States Constitution because of their policy and practice of rejecting cross-complaints without giving primary consideration to the facts involved.[1] In the present motion, defendants move for summary judgment pursuant to FED. R. CIV. P. 56 and maintain that the action should be dismissed as a matter of law because there is no evidence that plaintiff was subjected to any unequal treatment relative to others similarly situated. In addition, defendants contend that the Complaint should be dismissed because the District Attorney has absolute immunity with respect to rejecting cross-complaints, and, as a result, the claims against the County of Dutchess should be dismissed as well. For the reasons set forth below, defendants' motion for summary judgment is granted.

## BACKGROUND

This actions arises from an alleged incident that occurred on August 16, 2002 involving plaintiff and his former wife, Julie Staley, which resulted in plaintiff being charged with assault in violation of N.Y. PENAL LAW § 120.1. (Defs. Mem. Supp. Summ. J. at 1.) Plaintiff denies assaulting his wife and maintains that Julie "violently attacked" him. (Pl. Mem. Opp. Summ. J. at 3.) Plaintiff alleges that Julie "'came screaming down the hill, she threw her drink at [him] . . . [plaintiff] squirted her with the hose, she went

---

[1] Claims relating to violations of the Equal Protection Clause are actionable by and through 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

1

in the house got a pair of scissors, came out and cut the hose in four places and then came after . . . [plaintiff] with the scissors.'" (*Id.* (quoting Staley Dep. at 48-49).) Plaintiff maintains that he then "grabbed Julie, 'put her down on the ground and took the scissors away from her and then immediately let her go.'" (*Id.* (quoting Staley Dep. at 49).) Julie, who called the police on the day in question alleging that plaintiff had assaulted her, maintains that she had "nicely asked" plaintiff to stop washing the car, but "'[h]e instead [with] full force came at [her with] the hose. [So she] ran into the house and got the scissors [and] cut the hose so he would stop. He then came after [her] in [the] garage, knocked [her] down [with] full force [and] repeatedly kept banging [her] head on the cement floor. [She] kept asking him [to] stop [and] he stopped only when [her] daughter came out of the house screaming.'" (*Id.* at 1 (quoting Julie Staley Supp. Dep. at 1).) Julie maintains that as a result of the assault she suffered "abrasions and bruising." (*Id.*) Trooper Benassutti, the arresting officer, stated that plaintiff, when arrested, was "very intoxicated" and "kept yelling at him." (*Id.* at 2.)

I. **The Charges Against Plaintiff**

Julie's criminal charge against plaintiff was handled by Marjorie Smith, the Special Victims Bureau Chief for the Dutchess County District Attorney. (*Id.* at 1.) "When an assistant D.A. handles a domestic violence case, she speaks with the police officer and complainant to 'find out what the facts and circumstances were, what the history is between the two people, if any. If there are any other witnesses.' The D.A.'s office also employs domestic violence outreach workers who speak with the victims." (*Id.* (quoting Smith Dep. at 10-11).) Smith met with Julie and they spoke several times about the incident. (*Id.* at 1-2.) In addition, Smith spoke with Trooper Benassutti to find out more information about the case. (*Id.* at 2.) Julie was also contacted by an outreach worker. (*Id.* at 1-2.)

Plaintiff appeared in court seven times over the course of a year before the charges were dismissed in May 2003. (*Id*. at 3.)

II. **Plaintiff's Proposed Cross-complaint Against Julie Staley**

Plaintiff alleges that he attempted to tell the arresting officer his account of what had happened, but the Trooper "was not interested" and placed him in handcuffs. (*Id*.) At arraignment, plaintiff alleges that he was told "he could not file a counter-charge 'because everybody would do it and it would double the work load of the district attorney.'" (*Id.* (quoting Staley Dep. at 54).)

Nonetheless, plaintiff prepared a formal proposed cross-complaint dated September 11, 2002 and filed it with the Justice Court. (*Id*.) In January 2003,[2] Matt Mirable, the attorney representing plaintiff in the related criminal matter, gave Smith a copy of the proposed cross-complaint in a sealed envelope.[3] (*Id*.) Smith then gave the sealed envelope to Matthew Weishaupt, another Assistant District Attorney for Dutchess County at that time, to review the cross-complaint and determine whether it should be filed. (*Id*.) According to Weishaupt, although there were no written rules or procedures regarding the review of proposed cross-complaints, the general policy was that the District Attorney's Office would examine the proposed cross-complaint for legal sufficiency and consider the following factors: "the timing of the same, the nature of the allegations, the legal sufficiency or insufficiency of the complaint, the documents, if any which are provided in support of the complaint, the nature of the proposed evidence, if any, and a review

---

[2] Although defendants' papers state that Smith was presented with the proposed cross-complaint in January 2002, this is apparently erroneous because the alleged incident did not occur until August 2002. Therefore, we surmise that the proposed cross-complaint was received by Smith in January 2003.

[3] To avoid any potential conflict of interest or appearance of impropriety, Smith did not read the cross-complaint at any time during the prosecution of the Staley matter. (*Id*.)

of any real evidence submitted." (*Id*. at 3-4.) Weishaupt reviewed the proposed cross-complaint, an unsigned statement from Staley attached thereto, correspondence from Staley's attorney, as well as the file in the People's case against plaintiff, which included photographs and a police report. (*Id.* at 4; Pl. Mem. Opp. Summ. J. at 5.) Upon review, Weishaupt "'made a determination that there wasn't a basis to have a cross-complaint filed.'" (Defs. Mem. Supp. Summ. J. at 4 (quoting Weishaupt Dep. at 18).) In reaching this conclusion, Weishaupt relied on the following factors: (1) the initial part of the proposed cross-complaint alleged an incident which predated the incident in question by approximately two months and was never reported to the police; (2) the elements of the specific crimes alleged in the cross-complaint, menacing and harassment, were not made out; (3) the cross-complaint indicated there was an assault with injury, but there was no indication that there was any evidence to support that claim; (4) with respect to the first portion, there was no indication that there were photographs taken, other witnesses to support the claim or that the incident was reported to police; (5) with respect to the second portion, there was no indication that there was any evidence or witnesses to support the claim; and (6) plaintiff's failure to make a contemporaneous phone call about an allegedly violent act which Weishaupt believed factored into determining credibility. (Weishaupt Dep. at 20-23.) Weishaupt asserts that he did not speak with plaintiff prior to rejecting the proposed cross-complaint because plaintiff was a defendant in a pending criminal trial. (Defs. Mem. Supp. Summ. J. at 4.) Weishaupt maintains that he did not speak to any potential witnesses either because he did not believe it was necessary following his review of the cross-complaint. (*Id*.) However, plaintiff points out that County policy requires that "no domestic violence case shall be resolved without adequate opportunity for the victim's input." (Pl. Mem. Opp. Summ. J. at 8.)

At all times relevant to the present action, defendants did not have a blanket policy mandating rejection of all cross-complaints; rather, the policy required the review of all cross-complaints for "the

4

purpose of determining whether to accept and prosecute the said complaint." (Defs. Rule 56.1 Stmt. ¶ 1.) However, plaintiff maintains that defendants neither investigated, nor handled, his proposed cross-complaint in the same manner as the complaint against him. (Pl. Rule 56.1 Stmt. ¶ 1.) With respect to plaintiff's proposed cross-complaint, it was received by the District Attorney's Office and reviewed by a senior assistant district attorney. (Defs. Rule 56.1 Stmt. ¶ 3; Pl. Rule 56.1 Stmt. ¶ 3.) Defendants declined to prosecute plaintiff's proposed cross-complaint, which according to defendants, was determined following a review of said complaint. (Defs. Rule 56.1 Stmt. ¶ 4; Pl. Rule 56.1 Stmt. ¶ 4.) Furthermore, defendants maintain that "[a]t no time did any member of the District Attorney's Office perform an investigative function regarding plaintiff's cross-complaint." (Defs. Rule 56.1 Stmt. ¶ 5.)

## DISCUSSION

I. **Summary Judgment Motion**

    A. **Summary Judgment Standard**

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-50 (1986). A fact is material only if, based on that fact, a reasonable jury could find in favor of the non-moving party. *Anderson*, 477 U.S. at 248. The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Anderson*, 477 U.S. at 255. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

B. **Section 1983 Claim - Violation of the Equal Protection Clause**

A plaintiff may file suit under § 1983 against any individual acting under color of state law who caused him or her to be deprived "of any right, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) ("Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."); *Brown v. Middaugh*, 41 F. Supp. 2d 172, 190 (N.D.N.Y. 1999). Section 1983 applies to municipalities and other local governments and the Eleventh Amendment does not bar such suits. *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 690 (1978). Local governing bodies, such as a county,

> can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. . . . [A county] may [also] be sued for constitutional deprivations visited pursuant to government "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Id*. at 690-91. In the Complaint, plaintiff alleges violations of the Equal Protection Clause[4] against Grady, in his official capacity as District Attorney, and the County on the basis that the District Attorney's Office

---

[4] The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny any person within its jurisdiction the equal protection of the laws."

did not investigate cross-complaints on the same basis as original complaints; thus, the cross-complaint policy was inherently discriminatory. (Pl. Mem. Opp. Summ. J. at 9, 11.)

"A private citizen does not have a constitutional right to compel government officials to arrest or prosecute another person." *Fox v. City of New York*, No. 03 Civ. 2268, 2004 WL 856299, at *8 (S.D.N.Y. Apr. 20, 2004) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). However, where a governmental entity enacts a policy which acts as a blanket proscription against cross-complaints, the cross-complainant's constitutional rights are violated. *See Myers v. County of Orange*, 157 F.3d 66, 76 (2d Cir. 1998) (noting that a blanket no cross-complaint policy "bears no rational relationship to the legitimate governmental interest in impartial law enforcement and thus violate[s] . . . equal protection"). In *Myers*, the Second Circuit held that "a policy by a police department or district attorney's . . . office favoring an initial complainant over a later one without giving primary regard to the particular facts involved in the case violates the Equal Protection Clause of the Fourteenth Amendment." *Id.* at 69. Plaintiff does not contend that defendants had a blanket policy of prohibiting cross-complaints. (Pl. Mem. Opp. Summ. J. at 10.) Rather, plaintiff maintains that defendants did not investigate plaintiff's proposed cross-complaint in the same manner or on the same basis as his former wife's complaint against him, in violation of his rights under the Equal Protection Clause. (*Id.*) Nonetheless, defendants did accept plaintiff's cross-complaint for consideration and, only upon review, decided not to prosecute the cross-complaint.

Plaintiff names Grady as a defendant in his official capacity,[5] which is equivalent to bringing suit against the County. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (noting that "official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent"). Consequently, in order to prevail on his claim against the County or Grady in his official capacity, plaintiff must "'plead and prove three elements: (1) an official policy or custom that (2) cause[d] the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Fox*, 2004 WL 856299, at *13 (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

In the case at bar, plaintiff has failed to make out a *prima facie* case. He has neither pled, nor tendered sufficient evidence to prove, that defendants had an official policy or custom that caused him to be subjected to a denial of a constitutional right. Plaintiff maintains his equal protection rights were violated because the District Attorney's Office's review of his cross-complaint was not equal to its handling of the case against him. However, we agree with defendants that "[t]hese are two completely different circumstances involving different issues and requiring different approaches." (Defs. Reply Mem. Supp. Summ. J. at 4.) There is no evidence of unequal treatment of persons similarly situated because "one cannot compare the District Attorney's determination not to accept [and prosecute] the Staley cross-complaint with the District Attorney's handling of an open criminal case in its office." (*Id*.) These are two distinct functions of the District Attorney's Office which cannot be compared in determining whether persons similarly situated were provided unequal treatment. A person who proposes a cross-complaint and a person whose complaint has resulted in a formal charge by the police are simply not similarly situated.

---

[5] Because Grady is being sued solely in his official capacity, absolute and qualified immunity are not applicable to the present case. *See Smith v. Gribetz*, 958 F. Supp. 145, 155 (S.D.N.Y. 1997) (Conner, J.) (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993)).

Charging decisions are typically made by police or other law enforcement agencies whereas a cross-complaint proposed by a charged criminal defendant is reviewed by the District Attorney's Office. In the present case, the County had a "policy in existence that if a cross-complaint was brought," the District Attorney's Office would review it, and that is exactly what occurred here. (*Id.* at 1.)

Even more importantly, plaintiff has failed to point to any official policy or custom by defendants that violated his constitutional rights. Plaintiff's claim is based on one isolated incident, and the decision of the District Attorney's Office not to prosecute does not demonstrate the existence of an official policy prohibiting cross-complaints or even an unwritten policy or custom to that effect.[6] Defendants did in fact accept and review plaintiff's proposed cross-complaint. Simply because defendants disagreed with plaintiff as to the merits of the proposed cross-complaint and chose not to prosecute the same, does not give rise to an equal protection violation. *See Myers*, 157 F.3d at 76-77. Consequently, summary judgment is appropriate.

---

[6] In addition, the Second Circuit by summary order affirmed the decision in *Rennols v. City of New York* wherein the district court noted that "*Myers* and later Second Circuit decisions strongly imply that an explicit policy is necessary for a court to find an equal protection violation of the type found in *Myers*." No. 00 Civ. 6692, 2003 WL 22427752, at *5 (E.D.N.Y. Oct. 23, 2003), *aff'd*, No. 04 Civ. 0807, 2005 WL 643336 (2d Cir. Mar. 21, 2005) (summary order). Further, even if *Myers* was to be extended to include unofficial custom or practice, plaintiff has failed to present sufficient evidence to prove that defendants had such a custom or practice. Although plaintiff in his deposition testimony provides some statements allegedly made by employees of the County attesting to a policy against cross-complaints; these remarks do not rise to the level of evidence needed to survive summary judgment.

## CONCLUSION

For all of the foregoing reasons, defendants' summary judgment motion is granted, and the Complaint is dismissed with prejudice but without costs.

SO ORDERED.

Dated: White Plains, New York
      May 4, 2005

_William C. Conner_
Sr. United States District Judge